IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**RICARDO PÉREZ-SERRANO**,
    Petitioner,

v.

**COMMISSIONER OF SOCIAL SECURITY**,
    Defendant.

Civil No. 19-1499 (BJM)

## OPINION AND ORDER

Ricardo Pérez-Serrano ("Pérez") seeks review of the Commissioner's finding that he is not disabled and thus not entitled to disability benefits under the Social Security Act (the "Act"). 42 U.S.C. § 423. Pérez argues the Commissioner's decision should be reversed because the administrative law judge ("ALJ")'s residual functional capacity ("RFC") finding and step five non-disability determination were not supported by substantial evidence. Docket Nos. 3, 28. The Commissioner opposed. Docket Nos. 15, 30. This case is before me on consent of the parties. Docket Nos. 5, 25. After careful review of the administrative record and the briefs on file, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

After reviewing the pleadings and record transcript, the court has "the power to enter a judgment affirming, modifying, or reversing the decision of the Commissioner." 20 U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health & Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial

evidence." *Rodríguez Pagán v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir. 1987).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner employs a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to a specific list of impairments contained in the regulations' Appendix 1, which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled. If not, the ALJ assesses the claimant's RFC, which is used at steps four and five. An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(e) and 404.1545(a)(1). The ALJ determines at step four whether the impairments prevent the claimant from doing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(f). If he cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of his RFC, as well as his age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(g).

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. *Rosario v. Secretary of Health & Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Secretary of Health & Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).

Additionally, to be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir. 1986).

## BACKGROUND

The following is a summary of the treatment record, consultative opinions, and self-reported symptoms and limitations as contained in the Social Security transcript ("Tr.").

Pérez was born on February 13, 1970, completed high school, is able to communicate in English, and worked as an elevator mechanic. Pérez applied for disability insurance benefits on April 14, 2015, claiming to be disabled since September 10, 2014 (onset date) at age 44[1] due to back and neck pain, carpal tunnel syndrome, and leg and right eye problems. Pérez met the insured status requirement of the Act through December 31, 2018. Tr. 128, 137, 147, 289, 395, 415-420, 470.

*Treating Sources*

**Dr. Gilberto Antúnez and Dr. Dwight Santiago**

In June 2014, Dr. Gilberto Antúnez diagnosed Pérez with sacroiliac joint sprain and lumbosacral sprain due to a work injury. Dr. Antúnez prescribed anti-inflammatory and analgesic medications, and recommended rest and time off work. Tr. 192-193. No progress notes are available.

Pérez's employer then sent Pérez to Dr. Dwight Santiago (internal and sports medicine) for an occupational physician evaluation. Dr. Dwight Santiago evaluated Pérez on July 6, 2014, and prepared a report, dated August 15, 2014. Dr. Santiago found that Pérez's trunk and right sacroiliac joint were out of alignment, and lumbosacral spine movements were limited due to pain. Dr. Santiago noted that Pérez had a tendency of injuring his lumbosacral area when working and could

---

[1] Pérez was considered to be a younger individual (Tr. 137), and "[i]f you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work." 20 C.F.R. 404.1563(c).

take a minimum of three to four weeks for his lumbago condition to stabilize. Tasks that required bending his back, straining, or lifting or carrying heavy equipment could aggravate his lumbago and right lumbopelvic disfunction condition. Dr. Santiago opined that Pérez was not able to perform the essential tasks of his job. Tr. 189-195, 473-479.

**State Insurance Fund ("SIF")**

Pérez also received treatment for low back pain under the auspices of the SIF. Some of the notes are illegible. Those that are legible are summarized below.

In September 2014, Pérez presented lumbago, intense back pain, reduced back range of motion ("ROM"), and knee discomfort. Medications were prescribed. Tr. 210, 215-216, 218, 494, 499-500. Three spine x-rays dated September 15, 2014 show the following. The lumbosacral spine x-ray showed a muscle spasm, straightening of the lordosis, spondylosis, narrowed disc spaces in the lumbar region, osteopenia with vertebral endplates indentations, degenerative disc disease of the apophyseal joints at L4-L5 and L5-S1, and mild bilateral sacroiliitis. Tr. 49, 211, 495, 565. The cervical spine x-ray also showed a muscle spasm, loss of lordosis, spondylosis, narrowed disc spaces at C4-C5, and osteoarthritic changes at C6-C7. Tr. 50, 212, 496, 563. The thoracic spine x-ray showed narrowed disc spaces at T7-T8, T8-T9, and T9-T10. Tr. 51, 213, 497, 564. A left knee x-ray showed patellar osteophytosis. Tr. 214, 498, 566. Pérez was injected with Toradol. Tr. 209, 218, 493, 502.

In October 2014, Pérez reported moderate low back pain that radiated into his leg and felt like cramps. He also felt left knee pain. Notes indicate that Pérez presented lumbago and symptoms of radiculopathy. Medications were prescribed. 205, 207, 489, 491. On October 24, 2014, Dr. Rafael Oms, physiatrist, examined Pérez and found bilateral early wrist carpal tunnel syndrome, normal lower extremities, and no evidence of LS radiculitis. Tr. 51-61, 231-233, 515-517.

In November 2014, Pérez reported moderate pain and received physical therapy and injectable treatment (Toradol and Norflex) for his low back pain. He tolerated the procedure well. Tr. 202-203, 225, 486-487, 509. In December 2014, Pérez still felt intense pain and was instructed to use a cane for a left knee sprain. Tr. 208, 217, 492, 501. Another MRI of the lumbosacral spine, dated December 2, 2014, showed a lumbar spasm and distal lumbar disc disease. Tr. 48, 234, 518, 562.

In February and March 2015, Pérez continued feeling moderate low back pain and leg cramping. His lumbar ROM was reduced. Examination of his upper and lower extremities was

normal. He was injected, prescribed pain medication and a muscle relaxer, and referred to physical therapy. Tr. 219-222, 227-230, 503-506, 511-514. In April 2015, Pérez reported that he had not improved with physical therapy and still felt persistent pain in his low back. He claimed he could not stand for more than five to ten minutes, or drive. Pérez was referred to a pain clinic. Tr. 223-224, 507-508. A September 2015 MRI of the cervical spine showed degenerative changes and disc disease. Tr. 47, 561.

Pérez visited the emergency room at Hospital Metropolitana Dr. Pila for back pain on February 15 and June 1, 2015. A lumbar spine CT dated February 16, 2015 showed a bulging disc at L4-L5 with narrowing of the spinal canal with all remaining intervertebral disc spaces appearing preserved, normal anatomic alignment of the lumbar vertebral bodies, and paravertebral soft tissues within normal limits. Tr. 235-236, 519. Cervical x-rays from September 2016 showed spondylosis and muscle spasm. Tr. 46.

An MRI dated March 27, 2017 showed degenerative changes and disc disease, most severe at the L4-L5 level. Tr. 559. Dr. César Zapater, neurosurgeon, noted this evidence in a "Special Medical Report" dated April 3, 2017, and diagnosed that Pérez suffered from an extruded disc at the L4-L5 level and met the criteria for surgery (lumbar discectomy). Dr. Zapater's hospital admission order indicates that the condition was acute, and the prognosis guarded. Back surgery (discectomy herniated nucleus pulposus "HNP" L4-L5 extruded disc) was scheduled for June 21, 2017. Tr. 281-287, 582-588.

A referral sheet prepared by a SIF physician dated June 26, 2017 indicates that Pérez presented lumbago, and that L4-L5 discectomy surgery had been scheduled for June 21, 2017 but canceled because the disc injury was in the L5-S1 and confirmation was needed if the L4-L5 protrusion had always been present or if it was a new diagnosis. The sheet mentions that a lumbosacral MRI dated December 2, 2014 showed disc bulging at L4-L5, while another one dated March 27, 2017 showed L4-L5 disc protrusion. Tr. 280, 581. There is evidence that Pérez eventually underwent surgery on November 2, 2017 (Tr. 13-43).

**INSPIRA Behavioral Care**

The record contains evidence of psychiatric hospitalization for major depressive disorder from April 20 to 26, 2016. Medications were prescribed. The handwritten notes are illegible. Pérez's mental health is not at issue in this complaint. Tr. 237-256, 266-279, 538-557, 567-580.

*Procedural History*

Pérez claimed in a function report dated May 28, 2015, that back, neck, hand, knee and leg conditions and pain did not allow him to work and affected his ability for personal care, such as bending over to get dressed or bathe, and to take care of household and yard work. He needed a cane to walk and glasses. He also claimed that he was forgetful and needed reminders to take care of his hygiene, had difficulty sleeping, could not drive, rarely went out, did not spend time with others, and could not handle funds. He further check-marked that his limitations affected his ability to perform the following activities: lift, crouch, bend over, stand, reach, walk, sit, kneel, climb and descend stairs, see, use his hands, remember, finish tasks, and concentrate. He could not lift more than five pounds or finish what he started. He could walk for one minute before needing to stop and rest for ten minutes, and pay attention for one minute. He did not have problems with authority figures, managed stress by trying to calm himself down, and managed changes in routine by spending time with his wife. Tr. 176-182, 424-431.

The Disability Determination Services ("DDS") referred the case to Dr. Zaida Boria for a consultative neurological evaluation, performed on June 9, 2015. Pérez had lumbar musculoskeletal pain with ROM restrictions, increased lumbar muscle tone, and tenderness to palpation. Reflexes and muscle strength were normal. Dr. Boria found no atrophy of Pérez's hands or extremities. Babinsky, Tinel, Phallen, and Adson tests were negative. Dr. Boria observed that Pérez walked with a cane, but that he could also walk without it with no limp and was able to stand over heels and toes. He could also sit, stand, and travel. He could pinch, grasp, write, and handle and lift common objects. Tr. 521-529. X-rays interpreted by Dr. Gladimiro Dávila, radiologist, prepared for Dr. Boria as per the DDS's request, showed osteoarthritis in the cervical spine with spasm, and mild osteoarthritis of the lumbosacral spine with spasm and borderline L5-S1 disc narrowing. Legs and hands x-rays were normal. Tr. 530-531.

Dr. Rafael Queipo, non-examining consultant, assessed on June 29, 2015 that in an eight-hour workday, Pérez could occasionally[2] lift and/or carry (including upward pulling) twenty pounds and ten pounds frequently,[3] stand and/or walk with normal breaks for about six hours; sit with normal breaks for about six hours; push and/or pull and lift and/or carry unlimitedly;

---

[2] Occasionally means cumulatively one-third or less of an eight-hour workday. Tr. 295.
[3] Frequently means cumulatively more than one-third and up to two-thirds of an eight-hour workday. Tr. 295.

frequently climb ramps or stairs, balance, stoop, kneel, and crouch; and occasionally climb ladders, ropes, or scaffolds and crawl. Pérez had no manipulative, visual, communicative, or environmental limitations. Tr. 295-296.

The claim was denied on June 30, 2015, with a finding that while there was not enough vocational information to determine if he retained the ability to perform past relevant work, there were light jobs he could perform, and he was therefore not disabled. Tr. 169, 269, 297, 313. The Disability Determination Explanation reveals that Pérez's spine disorder was determined to be severe under Listing 1.04, but not his carpal tunnel syndrome, and that his medically determinable impairments were reasonably expected to produce his pain and symptoms but not to the extent claimed. Tr. 294.

Pérez requested reconsideration. His pain was still constant and radiated to his legs, but he did not claim worsening of his conditions or new limitations. Tr. 185, 300, 317, 437, 450.

At the SSA's request for medical evidence for Pérez's eye condition, Pérez informed that he was not being treated for his alleged eye condition. Tr. 187-188, 445-446. The case was referred to Dr. Rodolfo del Toro for a consultative examination. Dr. del Toro found on October 19, 2015 that Pérez had no visual disability, and only needed reading glasses to correct his decreased near vision or contact lens to correct his photophobia (light sensitivity). Tr. 532-537. Dr. Gary Spitz performed a special sense review on October 23, 2015 and found no pathology that would cause severe visual field loss and concluded that Pérez's visual fields were within normal limits and assessed that Pérez's visual impairment was non-severe. Tr. 305-306.

Dr. José González-Méndez affirmed Dr. Queipo's RFC assessment as written on November 10, 2015. Tr. 308.

On November 13, 2015, the claim was denied on reconsideration, as explained in the original denial of benefits notification. Tr. 173, 298, 318. The Disability Determination Explanation explains that, in addition to the carpal tunnel syndrome, Pérez's eye condition was also deemed non-severe. Pérez reported having problems reading, saw a black shadow in his eye, and got dizzy, but was not treated for that condition. Tr. 303.

At Pérez's request (Tr. 321), a hearing[4] before ALJ Aaron Picó was held on August 18, 2017. Tr. 144-168. Pérez, accompanied by counsel, testified that he worked as an elevator

---

[4] The hearing was held by video. Pérez appeared in Ponce, Puerto Rico. The ALJ presided from Columbia, Missouri. Tr. 146.

mechanic (installation and repair) for twenty-four years. He suffered a work accident and had since felt chronic back pain. He had difficulty walking, sitting and standing and cannot lift five pounds. His legs would fall asleep and his body trembled. He used a cane for walking, as prescribed by the SIF. He also suffered from depression. He was currently being treated for his conditions. Pills were causing him kidney problems, and he was opting for back surgery as recommended by Dr. Zapater. Tr. 147-154.

Vocational expert ("VE") Pedro Román testified that a hypothetical person with the same vocational profile as the claimant and limited as follows could not perform past medium or heavy work but could do light work with a Special Vocational Preparation ("SVP") of two: lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; sit for six hours during an eight-hour work day; stand and/or walk six hours, frequently climb stairs or ramps but occasionally ladders; frequently balance, lean, kneel, or crouch; occasionally crawl; frequently contact or interact with the public, co-workers, and supervisors; and maintain attention and concentration for periods of two hours at a time. Such a person could work as a cashier, a fast-food worker (the one who prepares food), or a furniture rental consultant.

The VE further testified that a person who needed to use a cane could perform the furniture rental clerk job but would not be able to perform the fast-food worker job, and there would be a 30% job availability reduction of the cashier jobs. That person could perform a telephone quotation clerk job (sedentary with an SVP of two) or be a cigar inspector (light work but spends most time sitting with an SVP of two and an availability reduction of 20%). The VE also testified that there would be no jobs in the national economy for a person who had the following limitations: sit more than six hours in an eight-hour work day, be on his feet for more than two hours, or lift ten pounds; had to alternate positions between standing or sitting every fifteen minutes impeding him from completing 50% of his work in a sustained manner; and had attention and concentration problems. Tr. 155-165.

Counsel requested at the hearing that evidence from a future evaluation regarding the need for surgery set to take place on August 28, 2017 also be considered. The ALJ advised counsel that as per SSA regulations, the elements to prove a disability had to already exist, and that future evidence of disability or of progression of a disability would not be considered for these proceedings, but that the claimant always had the right to amend the starting date of the disability. Tr. 166-168.

On November 13, 2017, the ALJ found that Pérez was not disabled under sections 216(i) and 223(d) of the Act. Tr. 126-143. The ALJ sequentially found that Pérez:

(1) had not engaged in substantial gainful activity since his alleged onset date (Tr. 128);

(2) had severe impairments which caused more than minimal functional limitations in his ability to perform basic work activities as required by SSRs 85-28 (degenerative disc disease and depression) (Tr. 128);

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526) (Tr. 29);

(4) retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except he could lift and carry twenty pounds occasionally and ten pounds frequently; stand and/or walk six hours and sit six hours in an eight-hour workday, with unlimited pushing and pulling other than that required in the lifting and carrying; frequently climb ramps and stairs, balance, stoop, kneel, and crouch; occasionally crawl and climb ladders, ropes, or scaffolds; frequently interact with coworkers, supervisors, and the public, and sustain attention and concentration for two-hour intervals. He also required a cane for ambulation. Tr. 132. Therefore, he could not perform past relevant work (Tr. 137); but

(5) as per his age, education, work experience, and RFC, there was work that existed in significant numbers in the national economy that Pérez could perform, such as cashier II, furniture rental consultant, and cigar inspector. Tr. 138.

The ALJ found that as to the SIF evidence from September 2014 to April 2015, there was evidence of diagnoses and treatment for lumbar spine and neck pain and left knee symptoms, but physical exam findings "were largely unremarkable" and most examination results showed intact body systems. Tr. 133. "Exam findings however were unremarkable and although the findings of the lumbar spine noted reduced flexion and extension, the exam findings did not provide range of motion findings, sensory findings, motor strength findings, or deep tendon reflex findings, to support a disabling impairment." *Id.* The ALJ summarized the physical exam findings, opinion evidence, and hearing testimony at Tr. 132-136. The ALJ noted that on April 3, 2017, "[p]hysical exam findings showed a positive straight leg raising test on the left side. The claimant was assessed with left L5 radiculopathy and met surgical criteria… These findings and associated symptoms are taken into account in formulating the residual functional capacity as the claimant is found to

require a cane for ambulation." Tr. 134. The ALJ also gave partial weight to the State agency medical consultants' physical RFC assessments because "the consultants did not have the benefit of the complete record of the claimant, which includes new evidence submitted at the hearing level, as well as the testimony of the claimant. Furthermore, the State agency consultants did not adequately consider the claimant's subjective complaints." Tr. 136. The ALJ gave great weight to Dr. Boria's 2015 report because it was based on the entire medical record available at the time and the physical exam Dr. Boria performed and was not inconsistent with other substantial evidence in the record. *Id.*

Pérez requested review of the ALJ's decision and submitted new evidence of back surgery for lumbar disc herniation, spinal stenosis, and radiculopathy. Tr. 393.

On March 25, 2019, the Appeals Council denied Pérez's request for review, finding that the new evidence submitted did not show a reasonable probability of changing the outcome of the decision and rendering the ALJ's decision the final decision of the Commissioner. Tr. 1. The present complaint followed. Docket No. 3.

## DISCUSSION

Pérez claims that the ALJ's findings regarding his back condition are not supported by substantial evidence. First, he disagrees with the ALJ's analysis that the SIF physical exam findings "were largely unremarkable" (Tr. 133) because of a lack of record evidence as to range of motion findings, sensory findings, motor strength findings, or deep tendon reflex findings. Pérez also argues that the ALJ, as a lay person, erroneously interpreted raw data, that is, a March 2017 lumbosacral MRI, and that the consultative physician Dr. Boria did not have the benefit of considering that MRI when examining Pérez. Pérez also questioned why the ALJ did not consider the surgery recommendation, which was discussed at the hearing with a request for permission to submit that evidence, and why the Appeals Council erred in finding that the new evidence did not show a reasonable probability of changing the outcome of the decision.

Where, as here, an ALJ reaches step five of the sequential evaluation process, the burden of proof shifts to the Commissioner to show that a claimant can perform work other than his past relevant work. *Ortiz*, 890 F.2d at 524. The record must contain positive evidence to support the Commissioner's findings regarding the claimant's RFC to perform such other work. *See Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

RFC is the most a claimant can do despite limitations from his impairments. 20 C.F.R. § 404.1545(a)(1). The RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. §§ 416.927(e)(2), 416.946). But because "a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* When measuring a claimant's capabilities, "an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person." *Santiago v. Sec'y of Health & Human Servs.*, 944 F.2d at 7 (1st Cir. 1991). The reason for requiring an expert's RFC assessment is that generally, "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." *Manso–Pizarro*, 76 F.3d at 17 (per curiam); *see also Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (per curiam) ("[S]ince bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record."). The ALJ may not substitute his "own impression of an individual's health for uncontroverted medical opinion." *Carrillo Marin v. Sec'y of Health & Human Servs.*, 758 F.2d 14, 16 (1st Cir. 1985). "This principle does not mean, however, that the [Commissioner] is precluded from rendering common-sense judgments about functional capacity based on medical findings, as long as the [Commissioner] does not overstep the bounds of a lay person's competence and render a medical judgment." *Gordils*, 921 F.2d at 329.

The ALJ determined that Pérez retained the RFC to perform light work as defined in 20 C.F.R. 404.1567(b)[5] with some exceptions. He could lift and carry twenty pounds occasionally and ten pounds frequently, with unlimited pushing and pulling other than that required in the lifting and carrying. He could stand and/or walk six hours and sit six hours in an eight-hour workday, and required a cane for ambulation. Also, he could frequently climb ramps and stairs, balance, stoop, kneel, and crouch; and occasionally crawl and climb ladders, ropes, or scaffolds. As to mental limitations, he could frequently interact with coworkers, supervisors, and the public, and sustain

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Individuals capable of performing light work can also perform sedentary work, "unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

Case 3:19-cv-01499-BJM   Document 34   Filed 05/21/21   Page 12 of 15

Pérez v. Commissioner of Social Security, Civil No. 19-1499 (BJM)                                                    12

attention and concentration for two-hour intervals. Tr. 132. This determination is supported by the Dr. Boria's consultative opinion, by Dr. Queipo's and Dr. González's RFC assessments, and by the treatment records and hearing testimony submitted by Pérez, as discussed below.

Dr. Boria's consultative examination is consistent with the ALJ's light work RFC finding. Dr. Boria found that Pérez had lumbar musculoskeletal pain with ROM restrictions, but his reflexes and overall muscle strength, including that of his extremities and hands, were normal. While Pérez walked with a cane, Dr. Boria observed that he could also walk without it with no limp. He could also sit, stand, pinch, grasp, write, and handle and lift common objects. The ALJ gave great weight to Dr. Boria's 2015 report, which was based on medical record available at the time and the physical exam Dr. Boria performed.

Also, the ALJ adopted the State agency medical consultants' RFC assessment of light work, but with additional limitations. Dr. Queipo and Dr. González assessed an RFC for light work, with no manipulative, visual, communicative, or environmental limitations. Although the ALJ assigned partial weight to their RFC assessment, reasoning that it was broader because they did not have the benefit of the complete medical record and of Pérez's testimony, and did not adequately consider Pérez's subjective complaints, their RFC assessment is still at the core of the ALJ's RFC finding. Tr. 136.

On that note, the ALJ reasoned that the RFC finding was supported by the record as a whole and "especially in light of the paucity of clinical deficit noted upon physical examinations and diagnostic studies, the relative conservative treatment throughout the period of adjudication (despite recommendation for back surgery), the lack of records or opinion evidence limiting the claimant's physical activities … Despite having chronic lumbar spine pain, the claimant's physical exam findings did not provide range of motion findings, sensory findings, motor strength findings, or deep tendon reflex findings, to support a disabling impairment." Tr. 137.

Treatment records and studies conducted of the affected areas support the ALJ's RFC finding. Starting in 2014, Pérez received treatment for moderate low back pain that at times would radiate to his legs and cause cramping. Notes from Dr. Santiago at around mid-2014 (before Pérez's onset date) and from the 2014 and 2015 SIF record indicate an unspecified reduced lumbar range of motion due to pain. Studies conducted of the affected areas also support the ALJ's RFC assessment. February 2015 lumbar spine CT showed a bulging disc at L4-L5 with narrowing of the spinal canal with all remaining intervertebral disc spaces appearing preserved, normal anatomic

alignment of the lumbar vertebral bodies, and paravertebral soft tissues within normal limits. X-rays prepared for Dr. Boria's examination revealed normal hands and legs, osteoarthritis in the cervical spine with spasm, mild osteoarthritis of the lumbosacral spine with spasm, and borderline L5-S1 disc narrowing. February and March 2015 SIF examinations of the upper and lower extremities were normal, even though Pérez showed early signs of carpal tunnel syndrome and reported leg pain and cramps. Although Pérez claimed not improving with physical therapy and feeling persistent pain, treatment with pain medications, muscle relaxers, and physical therapy continued to be prescribed.

Dr. Santiago noted that Pérez had a tendency of injuring his lumbosacral area, and tasks that required bending, lifting, or carrying heavy equipment could aggravate his back condition. It was also Dr. Santiago's opinion that Pérez was not able to perform the essential tasks of his job. However, Dr. Santiago's opinion that Pérez would be unable to do his job offers little insight into Pérez's functional limitations and is therefore not a medical opinion. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "[T]he regulations specifically exclude from consideration opinions on certain issues, such as conclusory statements that a claimant is disabled or unable to work." *Dunlap v. Commr. of Soc. Sec.*, 509 Fed. Appx. 472, 476 (6th Cir. 2012) (unpublished) (citing 20 C.F.R. § 404.1527(d)). Additionally, the determination whether a claimant is unable to work is reserved for the Commissioner. The SIF record contains no medical assessment regarding physical activity limitations.

The ALJ acknowledged that the consultants did not have all the medical evidence, and all the medical opinions considered by the ALJ predate the March 2017 lumbosacral MRI. The only medical opinion related to the March 2017 lumbosacral MRI is by treating physican Dr. Zapater, who included those results in his surgery recommendation report dated April 3, 2017, found at Tr. 287, 588, evidence which was available to the ALJ prior to the hearing. The ALJ summarized that MRI result at Tr. 135, noted at Tr. 134 that Pérez met surgical criteria, and stated having taken this evidence into account in finding that Pérez required a cane to walk, but did not enter into a lay analysis of that evidence and mostly relied on the medical record evidence from 2014 and 2015

used by the consultative examining and non-examining physicians. Pérez's argument regarding the March 2017 MRI is therefore without merit.

Lastly, Pérez's argument that the Appeals Council erred when it refused to review the ALJ's decision despite having received additional pertinent medical evidence is unavailing for several reasons. First, the Appeals Council "need not and often does not give reasons" for its decision not to review a case. *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001). Further, the council has broad latitude in deciding which cases will be reviewed. *Id.* (quoting 20 C.F.R. § 416.1470). I note that the "Notice of Appeals Council Action" indicates that "[u]nder our rules we will review your case for any of the following reasons: … We receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision. You must also show there is reasonable probability that the additional evidence would change the outcome of the decision." Tr. 1-2. Agency policy provides that the Appeals Council only considers additional evidence that relates to the period on or before the date of the hearing decision, if there is reasonable probability that the additional evidence would change the outcome of the decision and if it is accompanied by an explanation showing good cause for not submitting it prior to the hearing. 20 C.F.R. § 404.970(a)(5) & (b). The Appeals Council found that the new evidence submitted did not show a reasonable probability of changing the outcome of the decision. Tr. 2. Therefore, this court finds that the Appeals Council adequately considered all of the evidence that it was required to and did not err in deciding not to review the ALJ's determination.

Ultimately, it is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence (*see Ortiz*, 955 F.2d at 769 (citing *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987)). After thoroughly and carefully reviewing the record, I find that there is substantial evidence to support the ALJ's RFC finding. The decision is therefore affirmed.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 21st day of May, 2021.

                                             *s/Bruce J. McGiverin*
                                             BRUCE J. MCGIVERIN
                                             United States Magistrate Judge